IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| CATHERINE HERROD and ALAN PARKINSON as guardians ad litem for SCOTT HERROD, TAYLOR HERROD, MATTHEW HERROD, ELIZABETH HERROD, minors, CATHERINE HERROD, NILES HERROD and JANET HERROD,<br><br>Plaintiffs, | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' RULE 56(f) MOTION AND GRANTING DEFENDANT STEMCO, LP's MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| METAL POWDER PRODUCTS, INC., STEMCO, INC., BURRAND, INC., THE TIMKEN COMPANY, TEMPTE, INC., TEMPTE INDUSTRIES, INC., SPECIALIZED TRUCK EQUIPMENT MANUFACTURING COMPANY ("STEMCO"), STEMCO, LP, ENPRO INDUSTRIES, INC., COLTECH INDUSTRIES, GARLOCK, INC., METAL POWDER PRODUCTS COMPANY, CEROMET, INC.,<br><br>Defendants. | Case No. 1:07-CV-23 TS |

This matter is before the Court on Defendant Stemco, LP's Motion for Summary Judgment, filed July 31, 2008.[1] The case arose from an accident on I-15 near Woods Cross, Utah. A wheel assembly came off a trailer owned by DATS Trucking, bounced over the center cement divider, and crashed into the car driven by Kimball Herrod. Mr. Herrod died of injuries sustained as a result of the accident and his family filed suit against multiple parties. Specific to this Motion, Plaintiffs filed suit in products liability against Metal Powder Products, Inc. ("MPP"), who originally manufactured the parts which are used to secure the wheel assembly to the axel. These parts allegedly failed to properly secure the wheel assembly, which resulted in the wheel assembly coming off the trailer. Plaintiffs also filed suit in products liability against Defendant Stemco, LP ("Stemco"), which purchased certain assets of MPP approximately seven years after the allegedly defective parts were produced. Plaintiffs allege that both MPP and Stemco, along with others, are liable for the death of Mr. Herrod.

Stemco argues that Plaintiffs have failed to meet their burden to show that Stemco may be held liable under either of the two applicable doctrines of product liability: (1) successor liability or (2) an independent duty to warn. Plaintiffs have filed a Rule 56(f)[2] affidavit,[3] arguing that additional discovery is needed to obtain deposition testimony and other evidence in the case. Plaintiffs also argue that the existing evidence provides sufficient inferences in Plaintiffs' favor that summary judgment is inappropriate. For the reasons described below, the Court will deny Plaintiff's Rule 56(f) Motion and grant Stemco's Motion for Summary Judgment.

---

[1]Docket No. 55.

[2]Fed. R. Civ. P. 56(f).

[3]Docket No. 63, Ex. B.

## I. FACTUAL BACKGROUND

The following facts are taken from the parties' memoranda.[4] WPP was the manufacturer of the Pro-Torq line of wheel assembly parts, which keep the wheel assemblies secure to the vehicle, until November 19, 1996, when Stemco purchased the Pro-Torq product line from WPP (the "Asset Purchase"). Only those WPP resources related to the Pro-Torq product line were purchased. Stemco acquired no machinery, buildings, or employees of MPP.

Under the terms of the Asset Purchase, MPP agreed to "remain liable for and discharge fully and timely, all debts, expenses, liabilities, obligations, contracts, commitments and claims of any nature whatsoever of or against [MPP] or any of its Affiliates . . . ."[5] MPP also agreed to indemnify Stemco, its affiliates and respective successors and assigns, etc., from "any and all claims, losses, deficiencies liabilities, costs, damages, and expenses . . . ."[6] Stemco agreed to fulfill all warranty obligations related to the Pro-Torq product line, but only when requested by MPP, and MPP was responsible for reimbursing Stemco for the costs of any such obligations. Stemco was required to fill all open orders for MPP products,[7] and received a list of MPP customers from the year prior to

---

[4]Conclusory allegations that are unsupported by affidavits, deposition testimony, or other evidence, are not facts, and therefore need not be considered by the Court on a motion for summary judgment for the reasons stated below. Plaintiffs repeatedly claim that certain of Defendants' alleged facts are incorrect, but do not submit anything showing how these facts are disputed, as is required by Fed.R.Civ.P. 56(c), (e)(2). To the extent that Defendants' claims are supported by affidavits, deposition testimony, or other evidence, and to the extent Plaintiffs fail to counter that evidence with evidence of their own, Defendants' facts are assumed to be undisputed.

[5]Docket No. 56, Exhibit 2A, ¶ 3.

[6]*Id.*, Exhibit 2A, ¶ 8.2.

[7]At the time of the Asset Purchase, only five companies had open purchase orders with MPP, and those were all filled within a few months of the Asset Purchase.

the Asset Purchase, but did not purchase or assume any of MPP's repair or maintenance, or distributor contracts. Following the Asset Purchase, Stemco changed the terms of their contracts with distributors.

Following the Asset Purchase, Stemco did not, and to this day does not, engage in any installation, repair, service, or maintenance of the Pro-Torq line. Stemco continued to control the design of the Pro-Torq product line but outsourced the manufacture of certain products, initially signing a Supply Agreement with MPP wherein MPP would continue to make nuts used in the Pro-Torq line according to the design requirements of Stemco. Stemco manufactures the keeper that is used with the nut. Under the Supply Agreement, Stemco agreed not to make any effort to replace the Pro-Torq line until December 31, 2001.

The evidence before the Court indicates that the allegedly defective parts were manufactured by WPP prior to 1996, when Stemco purchased the product line. The nut and keeper which allegedly failed are marked RA258 and K258-A, respectively, which indicate that those parts were manufactured prior to 1989, or at least seven years prior to the Asset Purchase. Stemco has never manufactured nuts and keepers with those respective markings. Various other design elements of the products support that the allegedly faulty products were manufactured prior to the Asset Purchase. Some design changes occurred prior to the Asset Purchase, and others have been made by Stemco subsequent to the Asset Purchase. Stemco received a box of products which had been manufactured prior to the Asset Purchase. The evidence before the Court indicates that these products were not sold, but were kept as samples by Stemco personnel.

Stemco was aware of a potential installation problem with some of the older Pro-Torq line. If the nut were attached to the bolt with the wrong side facing out, then the wheel assembly could fall off the vehicle, even if the keeper was properly attached. However, there is no evidence of any

significant threat of failure if the nut were attached with the right side facing out, and the keeper properly attached. In other words, if the nut and keeper were sound, and if installed correctly, there was no risk of failure, and the only risk of failure arose from improper installation and maintenance of the nut. Stemco made some design changes to minimize the risk, and provided a warning on its packaging that improper installation could cause the wheel to come off and cause bodily injury.

Photographic evidence provided by the Utah Highway Patrol ("UHP") shows the keeper properly installed inside the nut, and the UHP's evidence log establishes the validity of that photographic evidence. During oral arguments, counsel for Stemco represented to the Court that depositions of UHP personnel involved in the investigation yielded no evidence that the wheel assembly had been tampered with prior to the photograph being taken.[8] The evidence before the Court therefore indicates that the keeper and nut were installed properly.

## II. STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[9] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[10] The Court is required

---

[8]Plaintiffs' counsel attempted to dispute the validity of the photographic evidence by offering the deposition testimony of a UHP officer, who testified that he could not say with certainty that the photographs were taken prior to other actions taken by UHP personnel. A mere lack of certainty on the part of one UHP officer, however, is insufficient to counter the photographic evidence and evidence log.

[9]*See* Fed. R. Civ. P. 56(c).

[10]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[11] To meet the burden of production required to support summary judgment, the movant "need only point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law."[12] Summary judgment is then appropriate "if the movant establishes entitlement to judgment as a matter of law given the uncontroverted, operative facts."[13]

Where a movant has met the initial burden required to support summary judgment, the non-movant must then either establish the existence of a triable issue of fact under Fed. R. Civ. P. 56(e) or explain why he cannot under Rule 56(f).[14] Conclusory allegations are insufficient to establish the existence of a triable issue of fact.[15] "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."[16]

When a non-movant opposes summary judgment under Fed. R. Civ. P. 56(f), the opposition must be supported by affidavits.[17] Those affidavits must state "with specificity how the desired time

---

[11]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001).

[12]*Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[13]*United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) (internal quotes and brackets omitted).

[14]*Pasternak v. Lear Petroleum Exploration*, 790 F.2d 828, 832 (10th Cir. 1986).

[15]*Simons*, 129 F.3d at 1388.

[16]*Clinger v. New Mexico Highlands Univ. Bd. of Regents*, 215 F.3d 1162, 1165 (10th Cir. 2000) (quoting *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995)). *See also Thomas*, 968 F.2d at 1024 (holding that the non-movant must identify sufficient evidence pertinent to the material issue "by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein").

[17]*Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993).

would enable the nonmoving party to meet its burden in opposing summary judgment."[18] "Rule 56(f) may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable . . . ."[19] Plaintiffs bear the burden of showing "how additional time will enable [them] to rebut [Defendants'] allegations of no genuine issue of fact."[20]

## III. DISCUSSION

### A. PLAINTIFF'S RULE 56(f) AFFIDAVIT

Plaintiffs argue that there has been insufficient time for discovery, and that if allowed to continue discovery, further information would be available which would preclude summary judgment. Plaintiffs state that "it is important for the court to realize, that only limited discovery has been done to date in this matter."[21] However, an assertion that discovery is incomplete is insufficient to defeat a motion for summary judgment under Fed. R. Civ. P. 56(f).[22] Plaintiffs have provided only one Affidavit in connection with their request under Rule 56(f),[23] and it fails to provide anything more than an assertion that more discovery is necessary. Plaintiffs have failed to identify with specificity how additional time would enable them to meet their burden and rebut Stemco's

---

[18] *Id.* (internal quotations and brackets omitted).

[19] *Id.* (quoting *Pasternak*, 790 F.2d at 833).

[20] *Id.*

[21] Docket No. 63 at 2.

[22] *Jensen*, 998 F.2d at 1554.

[23] Docket No. 63, Ex. B.

allegations of no genuine issues of material fact. Therefore, Plaintiffs' Rule 56(f) Motion will be denied.

B. STEMCO'S MOTION FOR SUMMARY JUDGMENT

There is no evidence before the Court, nor do Plaintiffs allege, that Stemco produced the nut and keeper which Plaintiffs allege was the cause of Mr. Herrod's death. Plaintiffs argue, however, that Stemco may be held liable under either successor liability or an independent duty to warn.

1. Successor Liability

Utah law follows the Restatement (Third) of Torts § 12, which allows for successor liability in only four cases: (1) where the successor agrees to assume the liability of the predecessor; (2) where the transaction was a fraudulent conveyance designed to escape liability for the debts or liabilities of the predecessor; (3) where the transaction is a consolidation or merger with the predecessor; or (4) where the transaction results in the successor becoming a continuation of the predecessor.[24]

Plaintiffs claim that Stemco is liable as the successor to MPP because, Plaintiffs allege, the Asset Purchase resulted in Stemco being a continuation of MPP. Indications of continuation include common officers, directors and shareholders,[25] or the existence of only one company after the

[24] *Tabor v. Metal Ware Corporation*, 168 P.3d 814, 816 (Utah 2007).

[25] *See*, *e.g.*, *Mickowski v. Visi-Trak Worldwide, LLC*, 415 F.3d 501, 509-10 (6th Cir. 2005) (applying Ohio law); *Medecine Shoppe International, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 804 (8th Cir. 2003) (applying Missouri law); *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1457-58 (11th Cir. 1985); *Dayton v. Peck, Stow & Wilcox, Co.*, 739 F.2d 690, 693 (1st Cir. 1984).

transaction between the parties.[26] It is not enough that the successor benefit from the predecessor's name and good will, or that the successor produce essentially the same product as the predecessor.[27]

Here, MPP continued to operate as a completely independent business entity subsequent to the Asset Purchase, with its own officers, directors, and shareholders. Plaintiffs argue, however, that Stemco was a continuation of MPP because it assumed an obligation to fulfill open purchase orders and to "repair or replace the Pro-Torq products previously sold by MPP to its customers."[28] The first of Plaintiffs' assertions is undisputed by Stemco. The second assertion, however, is at best misleading, for the Asset Purchase requires Stemco to replace or repair only when requested by MPP, and MPP is required to bear the cost of such replacement or repair. Put in context with the rest of the Asset Purchase agreement, it is clear that Stemco acted only as an agent of MPP in repairing or replacing previous MPP products.

Presented with the evidence presently before the Court, no reasonable juror could find that Stemco was a continuation of MPP after the Asset Purchase. Therefore, there is no dispute of material fact regarding the liability of Stemco under successor liability, and Stemco is entitled to judgment as a matter of law. Stemco's Motion for Summary Judgment will therefore be granted as to Plaintiffs' successor liability claims.

2. Duty to Warn

Even if not subject to successor liability, a successor may be liable under Utah for an independent duty to warn of risks of which it is aware. Utah law follows the Restatement (Third)

---

[26]*See*, *e.g.*, *Tucker v. Paxson Machine Co.*, 645 F.2d 620, 625-26 (8th Cir. 1981) (applying Missouri law); *Leannais v. Cincinnati Inc.*, 565 F.2d 437, 439-40 (7th Cir. 1977).

[27]*Tucker*, 645 F.2d at 625-26.

[28]Docket No. 63 at 32.

of Torts § 13, which creates an exception to the general rule against successor liability in § 12 when the successor failed to warn of a risk created by a predecessor's product, if: (1) the successor (a) agrees to provide services for maintenance or repair of the product, or (b) enters into a similar relationship with purchasers of the predecessor's products giving rise to actual or potential economic advantage to the successor; and (2) a reasonable person in the position of the successor would provide a warning.[29]

a. Provision of Services or Similar Economic Relationship

Plaintiffs argue that Stemco agreed to provide maintenance or repair services for the Pro-Torq line ***and*** entered into a similar relationship with prior purchasers of MPP's products which gave rise to an actual or potential economic benefit to Stemco. The evidence presently before the Court, however, provides no support for the first argument, and provides only limited support for the second argument. There is no evidence that Stemco provided any actual repair or maintenance services. At most, Stemco possessed the capacity to replace parts previously sold by MPP and under warranty, but MPP retained the obligation to pay the cost of any such warranty services.

The evidence before the Court also does not indicate that Stemco entered into a similar relationship with the prior purchasers of MPP's products. The Utah Supreme Court, in *Tabor*, adopted the language of the Restatement (Third) of Torts § 13, but that language is somewhat ambiguous. The language of the Restatement allows for imposition of a duty only if the successor entity enters into a "similar" relationship, but to precisely what the word "similar" is referring is not immediately clear. Plaintiffs argue, in essence, that Stemco has a duty to warn because it is in a similar position to MPP, relative to the customers of the Pro-Torq line. Other courts have rejected

---

[29] *Tabor*, 168 P.3d at 818.

such broad interpretations of § 13,[30] and the commonly-accepted interpretation is that the word "similar" refers back to the previous language which discusses provision of services by the successor for maintenance or repair.[31]

This restriction on the meaning of "similar" is necessary to limit lawsuits under a duty to warn to those wherein the successor would have reason to know that there was a problem with the specific product in question.[32] A successor cannot be held liable under a duty to warn unless its repair, maintenance, or other service-related actions have led to its knowledge of a potential for harm. In the present case, Stemco knew about the potential for problems arising from faulty installation of the Pro-Torq nut and keeper, and issued a general warning to those of its customers who would be installing the Pro-Torq products. However, there is no evidence before the Court that Stemco engaged in any activity that would have brought specific installation problems to its attention; its only obligations were to repair or replace faulty nuts and keepers, not to repair faulty installation of sound nuts and keepers.

---

[30]*Stratton v. Garvey International, Inc.*, 676 P.2d 1290, 1296 (Kan. Ct. App. 1984) (rejecting the concept that a duty to warn arises "in any circumstance in which a successor has any dealings with its predecessor's customers.").

[31]*See*, *e.g.*, *Travis v. Harris Corp.*, 565 F.2d 443, 449 (7th Cir. 1977) ("Succession to a predecessor's service contracts, coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, a purchaser corporation's knowledge of defects and of the location or owner of that machine, are factors which may be considered in determining the presence of a nexus or relationship effective to create a duty to warn."); *Shane v. Hobam, Inc.*, 332 F. Supp. 526 (E.D. Pa. 1971); *Jacobs v. Lakewood Aircraft Service, Inc.*, 512 F. Supp. 176 (E.D. Pa. 1981) (finding no duty to warn when successor did not continue service contracts, had never serviced predecessor's products, and did not seek out predecessor's customers to sell spare parts); *Pelc v. Bendix Machine Tool Corp.*, 314 N.W.2d 614 (Mich. App. Ct. 1981) (finding no duty to warn when successor had not serviced the machine in question, nor had any control over it).

[32]*See Polius v. Clark Equipment Co.*, 608 F. Supp. 1541, 1548 (D.V.I. 1985).

Moreover, the clear language of the Restatement, adopted by the Utah Court in *Tabor*, requires that the relationship must be to the actual or potential economic advantage of Stemco. The only warranty obligations fulfilled by Stemco were done at the request of MPP, and were reimbursed by MPP, so there is no indication that Stemco benefitted economically from repairing or replacing previous MPP products.

Plaintiffs have failed to provide evidence that would allow a reasonable juror to find either an explicit agreement by Stemco for maintenance and repair work or that Stemco entered into a similar relationship which promised economic benefit to itself. As Utah law requires one of these two conditions before a duty to warn may be imposed, Stemco is entitled to judgment as a matter of law on the issue of a duty to warn. However, even if Plaintiffs had provided sufficient evidence to support the existence of an explicit agreement or similar arrangement, they have failed to provide evidence that would allow a juror to find that the duty to warn in this case was reasonable.

b. Reasonableness of the Duty to Warn

Under Utah law, a duty to warn only exists when a reasonable person in the same circumstances as the successor, would have warned.[33] The test for reasonableness established by the Restatement, and adopted by the Utah Court, requires Plaintiffs to show that: (1) Stemco knew or reasonably should have known that the Pro-Torq products posed a substantial risk of harm to persons or property; (2) Stemco could identify those to whom a warning might be provided, and it can be reasonably assumed that they are unaware of the risk; (3) Stemco could effectively communicate to those to whom a warning might be provided, and the warning can be effectively acted upon by those

[33] *Tabor*, 168 P.3d at 818 (quoting Restatement (Third) of Torts § 13).

who receive the warning; and (4) the risk of harm is sufficiently great to justify the burden of providing a warning.[34]

*i. Knowledge of risk*

There is insufficient evidence before the Court to allow a reasonable juror to find that Stemco knew or reasonably should have known of a risk posed by their product. Plaintiffs point to two risks of which they allege Stemco was aware. First, Plaintiffs allege that Stemco was aware that there were risks associated with installing Pro-Torq products on the axles of a particular type of vehicle. Second, Plaintiffs allege that there was a known danger that, if installed incorrectly, the Pro-Torq nut and keeper could fail in securing the wheel assembly to the vehicle. Both of these arguments fail.

Plaintiffs have failed to provide evidence that Stemco was aware of the first risk, that associated with installing Pro-Torq products on a particular type of axle. The evidence provided by Plaintiffs indicates the existence of a risk, but the risk is not inherent in the Pro-Torq product, but rather in the combination of the Pro-Torq product with the type of axle in question.[35] No evidence has been submitted that would indicate that Stemco knew of the risk which arose only when their product was installed on that type of axle, so the Court finds that Stemco was not aware of the risk, and that Stemco was under no duty to warn of that risk.

Stemco admits that it was aware of a potential risk associated with improper installation of the Pro-Torq products. The existence of the risk was included in the documentation of the Asset

[34]*Id.*

[35]The Court declines to find, as urged by Stemco's counsel during oral arguments, that the risk was inherent in the axle. There is no evidence that the axle in question posed any risk except for when it was used with the Pro-Torq products.

Purchase, and after the Asset Purchase, Stemco provided a warning with all Pro-Torq products that improper installation "could cause the wheel to come off and cause bodily injury."[36] However, Plaintiffs cannot avail themselves of this potential risk for two reasons. First, Plaintiffs have failed to provide any evidence that improper installation caused the wheel assembly to come off, as the photographic evidence provided by the Utah Highway Patrol indicates that the Pro-Torq nut and keeper were installed correctly. Second, "negligent installation of a nondefective product does not give rise to a product liability claim."[37]

Counsel for Stemco stated repeatedly during oral arguments that Plaintiffs are attempting to attach liability under a duty to warn without identifying the particular risk which was unreasonable enough as to require a warning. To allow Plaintiffs to do so, Stemco argues, would be to allow the general rule of no successor liability, contained in § 12 of the Restatement (Third) of Torts, to be swallowed by § 13, which is essentially an exception to the general rule. Plaintiffs have certainly implied that the Court should attach liability even if no specific defect is found. Plaintiffs' counsel argued, at some length, that the Pro-Torq product line is an anomaly in the trucking industry, with the implication that there must be something wrong with Pro-Torq products, or else their market share would be larger. To the extent that these implications accurately reflect Plaintiffs arguments, the Court finds them entirely without merit and notes that if such a doctrine were ever to be widely accepted, it would stifle innovation in dangerous fashion.

The Court is aware that Plaintiffs have not relied solely on the argument that there must be some risk of defect, even though they have not identified it to this point. Specifically, Plaintiffs have

---

[36]Docket No. 63 at 31.

[37]*Utah Local Gov't Trust v. Wheeler Machinery Co.*, 154 P.3d 175, 179 (Utah Ct. App. 2006).

repeatedly argued that if no other defect is readily apparent, then the accident must have been the result of improper installation, even though the evidence says otherwise. In a somewhat backhanded complement to Stemco and its predecessor, WPP, Plaintiffs argue that the only possible way that the wheel assembly could have separated from the vehicle and caused the crash is if the Pro-Torq products had been installed incorrectly. This appears to be an attempt at a modified version of the doctrine of *res ipsa loquitur*, except that photographic evidence before the Court precludes the necessary inference of fault on the part of the Pro-Torq products.

It is unclear precisely what caused the wheel assembly to separate from the truck, resulting in the death of Mr. Herrod. What is clear, however, is that Plaintiffs have failed to provide the Court with sufficient evidence to establish a genuine issue of material fact on the question of whether Stemco had knowledge of a risk that required a warning.

*ii. Identification of those to be warned*

Plaintiffs have also failed to provide sufficient evidence to allow a reasonable juror to find that Stemco had the capacity to identify those who had purchased Pro-Torq products in the past. Stemco was provided with a list of those customers who had purchased Pro-Torq products from MPP for a year prior to the Asset Purchase, but there is no evidence presently before the Court that specific notification to any of those previous MPP customers would have prevented the accident which led to Mr. Herrod's death. There is no evidence before the Court that any entity on the list provided to Stemco had any connection to the company which owned the truck that was involved in the accident. Therefore, there is no evidence that any specific warning would have resulted in additional maintenance to the truck in question.

While a reasonable juror could find that it would have been reasonable for Stemco to issue a warning to those who were on the MPP customer list, no reasonable juror could conclude that failure to do so was the proximate cause of Plaintiffs' injury.

*iii. Effective communication of warning*

Plaintiffs have failed to provide evidence sufficient to allow a reasonable juror to find that Stemco could have effectively communicated with those at risk. Plaintiffs argue that Stemco could have issued a general warning to the entire trucking industry. In fact, the limited information Stemco possessed regarding past MPP customers and the end-users of the Pro-Torq products indicates that only an industry-wide warning would have had any reasonable likelihood of reaching either the entity which installed the Pro-Torq products, the entity which owned the truck on which the products were installed, or the company which furnished maintenance for the truck. However, there is no evidence before the Court that any such warning could have been effectively acted on by those who were responsible for the maintenance of the truck which was involved by the accident, because there is no evidence that the Pro-Torq products were installed incorrectly, which was the only known source of risk.

Plaintiffs argue that if Stemco had issued a "proper" warning,[38] that the accident would not have happened and Mr. Herrod would not have perished. This argument ignores the facts presently before the Court. Stemco did provide a warning with all Pro-Torq products. The adequacy of the warning would normally be a question for the jury, but Plaintiffs have failed to provide the evidence necessary to establish a question of material fact regarding either the establishment of the necessary

[38]Docket No. 63 at 31.

actions by Stemco for imposition of a duty to warn or the reasonableness of providing the type of warning Plaintiffs argue would have prevented the accident.

*iv. Magnitude of risk and burden of warning*

The Court is unable to balance the magnitude of the risk posed by improper installation against the burden of issuing a warning because Plaintiffs have failed to provide the Court with evidence of a warning which would have prevented the accident. Likewise, the Court has been presented with only minimal evidence regarding the risk posed by improper installation. The Court will therefore issue no findings regarding this reasonableness factor.

IV. CONCLUSION

On the issues of successor liability and an independent duty to warn, Plaintiffs have failed to establish the existence of a triable issue of fact under Fed. R. Civ. P. 56(e), and have failed to explain with specificity, under Rule 56(f), why more discovery would allow them to do so.

It is therefore

ORDERED that Plaintiffs' Rule 56(f) Motion is DENIED. It is further

ORDERED that Defendant Stemco, LP's Motion for Summary Judgment (Docket No. 55) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Stemco, LP and against Plaintiff on all claims brought by Plaintiff against Stemco, LP.

DATED December 10, 2008.

BY THE COURT:

TED STEWART
United States District Judge