IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| CATHERINE HERROD and ALAN PARKINSON as guardians ad litem for SCOTT HERROD, et al., <br><br>    Plaintiffs, <br><br><br><br>            vs. <br><br><br><br> METAL POWDER PRODUCTS, INC., et al., <br><br>        Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT <br><br><br><br><br> Case No. 1:07-CV-23 TS |

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Metal Powder Products ("MPP") and a Motion for Summary Judgment filed by Defendants Timpte, Inc. and Timpte Industries, Inc. (collectively, "Timpte"). Plaintiffs have also filed a Motion to Strike MPP's and Timpte's responses to Plaintiffs' supplemental memorandum. For the reasons set forth below, the Court will grant the Motions for Summary Judgment and deny the Motion to Strike.

## I.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[1]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]  To meet the burden of production required to support summary judgment, the movant "need only point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law."[4]  Summary judgment is then appropriate "if the movant establishes entitlement to judgment as a matter of law given the uncontroverted, operative facts."[5]

Where a movant has met the initial burden required to support summary judgment, the non-movant must then either establish the existence of a triable issue of fact under Fed. R. Civ. P. 56(e) or explain why he cannot under Rule 56(f).[6]  Conclusory allegations are insufficient to establish the

---

[1]*See* Fed. R. Civ. P. 56(c).

[2]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001).

[4]*Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[5]*United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) (internal quotes and brackets omitted).

[6]*Pasternak v. Lear Petroleum Exploration*, 790 F.2d 828, 832 (10th Cir. 1986).

existence of a triable issue of fact.[7]  "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."[8]

## II.  BACKGROUND

Except as indicated, the following facts are undisputed, as established by the parties' submissions.  On January 30, 2005, a wheel assembly separated from the trailer of a truck traveling southbound on I-15 in Davis County, Utah.  The wheel assembly struck the car driven by Mr. Kimball Herrod, killing him.  The wheel assembly used a Pro-Torq product, manufactured by MPP,[9] to secure the wheel assembly to the truck.  The truck, itself, was manufactured and sold by Timpte.  The Pro-Torq product was produced sometime prior to 1989, and utilizes a nut to hold the wheel assembly on the truck's axle, or "spindle."  A "keeper" is inserted into the inside of the nut, in order to prevent the nut from disengaging from the spindle.  The Pro-Torq system, therefore, requires both the nut and the keeper to secure the wheel assembly.

There were twenty-nine events, starting in 1989 and running through 1996, where wheel assemblies using Pro-Torq products fell off the trucks to which they were attached.  Of that number,

---

[7]*Simons*, 129 F.3d at 1388.

[8]*Clinger v. New Mexico Highlands Univ. Bd. of Regents*, 215 F.3d 1162, 1165 (10th Cir. 2000) (quoting *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995)).  *See also Thomas*, 968 F.2d at 1024 (holding that the non-movant must identify sufficient evidence pertinent to the material issue "by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein").

[9]MPP argues that there is some evidence that the product was produced by another entity, but assumes, for the purposes of the Motion for Summary Judgment, that the product was produced by MPP.

fourteen listed the cause as "improper installation."[10]  However, three of those were for reasons clearly unrelated to the defect alleged by Plaintiffs.

The wheel assembly was recovered by Utah Highway Patrol ("UHP") officers, and was later disassembled and analyzed.  A nut and keeper were found inside the wheel assembly when it was disassembled.

### III.  DISCUSSION

At a July 13, 2009 hearing on Defendants' Motions for Summary Judgment, the Court indicated that Utah law states that while improper installation may render a product unreasonably dangerous, that negligent installation, alone, does not give rise to a cause of action against the original manufacturer of the product[11] and asked Plaintiffs' counsel whether an otherwise safe product becomes dangerous if it is difficult to install.   Plaintiff objected to the wording of the question, arguing that their contention was that it wasn't otherwise safe because it "invited" installation error.  The Court granted Plaintiffs ten days to file a supplemental brief providing legal support for the argument that a product may be unreasonably dangerous based solely on the difficulty of installation.  The Court indicated it would allow Defendants an additional ten days to respond to Plaintiffs supplemental brief.  The Supplemental briefs have been received by the Court, and the issue is ready for a judicial determination.

Plaintiffs argue, with support from a retained expert, that the nut and keeper had detached from the spindle due to faulty installation of the keeper.  Defendants argue that the keeper was found

---

[10]Docket No. 80, Ex. 6.

[11]*Utah Local Gov't Trust v. Wheeler Machinery Co.*, 154 P.3d 175, 179 (Utah Ct. App. 2006), *reversed on other grounds in Utah Local Gov't Trust v. Wheeler Machinery Co.*, 199 P.3d 949 (Utah 2008).

by UHP officers "properly installed inside the nut,"[12] and cite to the depositions of UHP Trooper Lance Remund who supervised the analysis of the wheel assembly, and Scott Kimbrough, an individual who was involved in the original analysis of the wheel assembly and conducted a number of additional tests. There is significant debate over what the evidence shows regarding whether the nut and keeper were properly installed on the spindle prior to the accident, with all parties providing evidence to support their claims. Summary judgment is, therefore, inappropriate to the extent it is based on the theory that the nut and keeper were properly installed.

Plaintiffs' primary argument in this case, underlying Plaintiffs' negligence and products liability claims, is that the Pro-Torq system design "causes improper installation."[13] In essence, Plaintiffs argue that the Pro-Torq system is defective because is so complicated that it is impossible for mechanics to reasonably know whether they have installed it correctly. Plaintiffs also argue that MPP and Timpte were negligent under the Restatement (Second) of Torts, § 389, because the Pro-Torq system could not be made reasonably safe before being put to use.

A.    PRODUCTS LIABILITY

Under Utah law, a plaintiff in a products liability case must show: "(1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries."[14] As noted above, there is sufficient dispute of material fact regarding the installation of the wheel assembly in this case to defeat summary judgment. Likewise, the parties appear to agree that, if a

---

[12]Docket No. 75 at 3.

[13]Docket No. 80 at 22.

[14]*Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274, 1278 (10th Cir. 2003) (quoting *Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 418 (Utah Ct. App. 1994)) (internal quotes omitted).

defect exists, it is a defect that existed at the time the product was sold.  Therefore, the only question presently before the Court is whether the Pro-Torq product was unreasonably dangerous.

A product is unreasonably dangerous if "the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer or user of that product in that community considering the product's characteristics, propensities, risks, dangers, and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user or consumer."[15]  A plaintiff must also be able to prove that there is a safer design that is practicable.[16]

Courts have held that foreseeable misuse can give rise to a strict products liability suit.[17]  The Restatement (Third) of Torts § 2 also states that "foreseeable product misuse, alteration, or modification must also be considered in deciding whether an alternative design should have been adopted."

Plaintiffs argue that foreseeable misinstallation may also give rise to strict products liability and that foreseeability is a question for the jury.[18]  Plaintiffs argue that misinstallation was foreseeable in this case because there were "numerous incidents of improper installation . . . and Metal Powder Products (MPP) knew of these problems."However, the undisputed evidence shows only a handful of instances in decades of use where the Pro-Torq system may have failed due to the

---

[15]Utah Code Ann. § 78-15-6(2).

[16]*Brown*, 328 F.3d at 1279.  Plaintiffs repeatedly argue that the Pro-Torq line enjoys a very small market share, and that the dominant product in the market is an available and practicable safer design.  However, the Court has already rejected that argument.  Docket 67 at 14.

[17]*See, e.g.*, *Barrett v. Waco International Inc.*, 702 N.E.2d 1216, 1220 (Ohio Ct. App. 1997) ("Ohio Courts have held that design defect claims may include the failure to design a product to prevent foreseeable misuse.").

[18]*Allen v. Minnstar, Inc.*, 97 F.3d 1365, 1368-69 (10th Cir. 1996).

design defect alleged by Plaintiffs.  Plaintiffs cite a document showing that a MPP employee responsible for the Pro-Torq line had difficulty installing the product correctly, but there is no evidence that he had ever been trained, yet he was able to successfully install the product within three tries.

If Plaintiffs' legal argument is correct, the Court would likely need to deny summary judgment and allow a jury to determine foreseeability.  Understandably, then, Plaintiffs and Defendants dedicate a significant portion of their supplemental memoranda to the issue of foreseeability.  However, under Utah law, "the after-sale negligent installation of a nondefective product does not give rise to a product liability claim."[19]  The Court, therefore, need not reach Plaintiffs' foreseeability claims if the Pro-Torq product in question was otherwise nondefective.[20]

Plaintiffs do not dispute, for the purposes of these motions, that there is no danger of failure if the keeper is properly installed in the nut.  As noted, Utah law states that a plaintiff may not maintain a products liability claim against a manufacturer when the proximate cause of the plaintiff's injury is improper installation.  Plaintiffs, however, argue for a legal standard that would allow a plaintiff to maintain a products liability claim against a manufacturer when the proximate cause of the plaintiff's injury is improper installation *if* the improper installation occurred because the design

---

[19]*Wheeler Machinery Co.*, 154 P.3d at 179 (citing *Alder v. Bayer Corp.*, 61 P.3d 1068, 1076 (Utah 2002)).

[20]Defendants also question whether Plaintiffs have provided sufficient evidence that an alternative design is practicable, but that question is subsidiary to the primary question before the Court.  The Court need not address questions of practicability unless Plaintiffs provide legal support for their contention that a product may be considered unreasonably dangerous because it is difficult to install.

of the product makes it difficult to install.[21]  Utah courts, however, have never adopted such a legal

standard.

In response to the Court's request for case law supporting its legal argument, Plaintiffs

submit: *Steuhl v. Home Therapy Equipment, Inc.*,[22] a 2008 case from the New York Supreme Court,

Appeals Division; *Sprouse v. American Tire Distributors, Inc.*,[23] a 2009 case from the United States

District Court for the Eastern District of Virginia; and *Nesselrode v. Executive Beechcraft, Inc.*,[24] a

1986 case from the Missouri Supreme Court.

In *Steuhl*, a woman was injured when a motorized hospital bed she was using collapsed.  She

sued the manufacturer in strict products liability.  The New York court held that there were three

ways to establish strict products liability: (1) manufacturing flaw; (2) failure to warn; and (3) design

defect.  The court held that the manufacturer was entitled to dismissal of the causes of action

because: (1) there was no proof of a manufacturing flaw, as the bed was constructed according to

manufacturers specifications and design;[25] (2) there was no failure to warn because the manufacturer

sold the beds to dealers who used trained technicians to assemble the beds and because the

technicians were aware that failure to properly install certain parts could cause the bed to fall apart.[26]

_____

[21]Plaintiffs prefer to phrase the issue as one of product designs which "invite" installation error.  The Court finds plaintiffs' semantic arguments unhelpful, and will consider the question in terms of difficulty of installation.

[22]51 A.D.3d 1101 (N.Y. App. Div. 2008).

[23]2009 WL 1404735 (E.D. Va. May 15, 2009).

[24]707 S.W.2d 371 (Mo. 1986).

[25]*Steuhl*, 51 A.D.3d at 1102-03.

[26]*Id.* at 1103.

Addressing the issue of design defects, the court held that a prima facie case "requires proof that the manufacturer marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury.  The standard for determining the existence of a design defect requires an assessment of whether if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing the product designed in that manner."[27]  Competing experts testified that the bed was negligently installed, but differed on whether the design of the product was defective.  The court concluded that there was a genuine issue of fact regarding the reasonableness of the bed's design and affirmed a denial of summary judgment.

In *Sprouse*, a man was killed when a car fell off a lift onto him.  The plaintiff's expert testified that there was a design defect because the design "provide[d] for possible improper installation."[28]  The court indicated that there was "one theory which presents some merit,"[29] which was apparently some form of hybrid between a claim of manufacturing or design defect and a claim of improper adjustment.  However, the court found that plaintiff's expert failed to provide sufficient evidentiary support for his theory, and granted summary judgment to the defendant.  The court did not "recognize the legal rule," as asserted by Plaintiff,[30] but merely indicated that there might be some merit, if supported by the evidence.

---

[27]*Id.* at 1103-04 (internal quotation marks, citations, and brackets omitted).

[28]*Sprouse*, 2009 WL 1404735 at *4.

[29]*Id.*

[30]Docket No. 108.

In *Nesselrode*, a man was killed in an airplane crash and his family sued the pilot, owner, and manufacturer.  Apparently, there were two parts on opposite sides of the plane that have to do with control of the plane.  They are symmetrical parts, yet because they are intended to be on opposite sides of the plane, they have asymmetrical functions.  The court accepted the legal theory that a product that lacked "murphy proof"[31] design features could be unreasonably dangerous, even if negligent installation was an intervening cause.  The "murphy proof" standard, identified by the Missouri Court, is derived from federal regulations applicable solely to the aviation industry. The Missouri Court was, therefore, applying a federal aviation standard to the design of aviation products, and *Nesselrode* cannot be reasonably interpreted as an attempt to implement a broad products liability standard for negligent design.  Plaintiffs argue that  "[m]urphy proof design features are error proof design features.  To murphy proof a product is to ensure that errors are minimized if not eliminated."[32]  This is also not a helpful legal standard, because no product is "error proof," and has no legal basis for broad application to products liability.

Plaintiffs are unable to muster sufficient legal authority to justify their proposed exception to otherwise clear Utah law that improper installation will not be sufficient to maintain a products liability cause of action against the manufacturer.  None of the cases cited by Plaintiffs establish a legal rule that would justify this Court in declaring new products liability law in Utah, an action that is clearly outside the limited jurisdictional boundaries of the federal courts.  The New York court, in *Steuhl*, declared a risk/utility balancing test for design defects which has never been used in Utah courts.  The District Court, in *Sprouse*, declared only that the plaintiff's argument had "some merit,"

---

[31]*Nesselrode*, 707 S.W.2d at 381.

[32]Docket No. 108 at 4 n.2.

but did not examine the legal argument in depth because of a lack of supporting evidence.  The Missouri court, in *Nesselrode*, applied federal aviation regulatory standards to the design of airplane parts.

Plaintiffs argue, however, that MPP may still be subject to strict product liability because it failed in its duty to warn.  A failure to warn claim must include the following elements: (1) the manufacturer knew or should have known of a risk associated with its products; (2) the risk was not disclosed or inadequately disclosed; and (3) the failure to give adequate warning caused the injury.[33] The evidence shows that MPP was aware of some risk associated with improper installation of the Pro-Torq products.  However, the evidence also shows that MPP provided installation instructions with every product and provided a warning that bodily harm could result if the instructions were not followed.  Plaintiffs fail to identify a warning that would have prevented the accident, as required under Utah law.[34]  Plaintiffs products liability claim against MPP must, therefore, fail.

Likewise, Plaintiffs have failed to produce any evidence that the Pro-Torq product was improperly installed when Timpte manufactured and sold the truck.  The truck was manufactured in 1986,[35] nearly twenty years prior to the accident which claimed Mr. Herrod's life.  The evidence before the Court indicates that the Pro-Torq nut and keeper would likely have been removed more than once during its nineteen years of operation during routine maintenance and may have been removed and re-installed at least once a year during that time.[36]  To counter Timpte's argument,

---

[33]*House v. Armour of America*, 929 P.2d 340, 343 (Utah 1996).

[34]*Id.* at 346.

[35]*See* Docket No. 93 at 2.

[36]Docket No. 95, Ex. 3.

Plaintiffs reference the deposition of a Mr. Anthony Skipper, an experienced engineer, who testified that the nut and keeper were likely original equipment. However, that argument says nothing about the likelihood that the nut and keeper, as original equipment, were removed multiple times during maintenance and then re-installed incorrectly by the truck's owner.

Plaintiffs have failed to provide sufficient evidence that the Pro-Torq product was defective when sold by MPP or when Timpte installed it on the truck originally, and the Court will grant summary judgment on Plaintiffs' strict products liability claims.

B.      NEGLIGENCE

Plaintiffs base their negligence claim on Section 389 of the Restatement (Second) of Torts, which imposes a duty upon any entity who supplies a product for another's use, "knowing or having reason to know that the [product] is unlikely to be made reasonably safe before being put to use." Because the Court has determined, as a matter of law, that Plaintiffs have not shown that the Pro-Torq product was unreasonably dangerous, there are no remaining issues of material fact regarding whether the Pro-Torq product could have been made reasonably safe before being put to use. Under Utah law, there is no duty "to refrain from marketing a non-defective product when a safer model is available."[37]  Defendants are, therefore, entitled to judgment as a matter of law on Plaintiffs' negligence claims, and summary judgment will be granted.

C.      PLAINTIFFS' MOTION TO STRIKE

Plaintiffs have filed a Motion to Strike MPP's and Timpte's responses to Plaintiffs' supplemental memorandum. In the Motion, Plaintiffs argue that the responses "are not responsive to the Court's direction for supplemental briefing and are immaterial to the issue the Court ordered

---

[37]*Slisze v. Stanley-Bostitch*, 979 P.2d 317, 319 (Utah 1999).

briefed."[38]  Defendants argue, in response, that Plaintiffs' Motion to Strike was merely a response to Defendants' supplemental brief.  As noted, both Plaintiffs and Defendants devoted space in their supplemental memoranda to issues that were nonresponsive and immaterial to the Court's direction for supplemental briefing.  However, the Court is capable of discerning those portions of the parties' memoranda that are responsive and relevant to the Court's request for supplemental briefing and disregarding the remainder.  Moreover, even if the responses of MPP and Timpte were stricken, Plaintiffs have failed to provide sufficient legal support to support their claims against MPP and Timpte, so Plaintiffs Motion to Strike will be denied.

## IV.  CONCLUSION

It is therefore

ORDERED that MPP's Motion for Summary Judgment (Docket No. 74) and Timpte's Motion for Summary Judgment (Docket No. 78) are GRANTED.  It is further

ORDERED that Plaintiffs' Motion to Strike (Docket No. 112) is DENIED.

DATED   August 20, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[38]Docket No. 112 at 2.