IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| CATHERINE HERROD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> METAL POWDER PRODUCTS, et al., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 1:07-cv-00023 CW <br><br> Judge Clark Waddoups |

  Before the court is Defendants Timpte, Inc. and Timpte Industries, Inc.'s (collectively "Timpte") second motion for summary judgment. (Dkt. No. 100.) Plaintiffs are seeking damages from Timpte for personal injury and wrongful death on theories of negligence, strict liability for product defect, and a failure to warn. For the reasons stated below, the court GRANTS Timpte's second motion for summary judgment in its entirety.

## BACKGROUND

  Plaintiffs brought the current suit against several defendants, including Timpte, in connection with an automobile accident that occurred on January 30, 2005. The accident occurred in Davis County, Utah when a rear wheel came off a semi-trailer and struck a vehicle occupied by Plaintiffs who were traveling in the opposite direction. *See* Mem. Supp. Second Mot. for Summ. J. 3 (Dkt. No. 101.) The accident caused Plaintiffs Catherine, Scott, Taylor, Matthew, and Elizabeth Herrod to sustain serious personal injuries and killed Kimball Herrod, the husband and father of the plaintiffs injured in the accident and son of Plaintiffs Niles and

Janet Herrod.

The trailer involved in the accident had been manufactured by Timpte as part of a special order of 210 semi-trailers placed by Northwest Transport Service, Inc. ("Northwest") on September 26, 1985. Each of the trailers, including the trailer at issue in this case, was to be built according to detailed specifications provided to Timpte by Northwest. These specifications indicated that, among other things, each trailer was to use Pro-Torq nuts to secure the wheels to the axles. Timpte neither recommended or suggested the use of the Pro-Torq wheel retention system in the trailers ordered by Northwest. Construction of the trailer at issue was completed in March of 1986.

Timpte was not aware of any safety concerns, alleged defects or design issues, or accidents involving the Pro-Torq wheel retention system at any time before the automobile accident that gave rise to the current suit. However, in November of 2005, the National Highway Traffic Safety Administration issued a report, based on a manufacturer's report dated June 21, 2002, indicating that certain semi-trailers equipped with the Pro-Torq wheel retention system were subject to wheel separation due to improper installation.

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). A fact is "material" if it is "essential to the proper disposition of the claim." *Id.* The court views

the evidence in the light most favorable to the non-moving party, as "evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in the [nonmovant's favor]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

In their complaint, Plaintiffs allege negligence and strict liability causes of action against Timpte and other defendants.  As Plaintiffs have conceded that their claims against Timpte are not based on negligence, *see* Mem. Opp. Second Mot. Summ. J. 3 (Dkt. No. 106.), the court will focus its analysis on the strict liability claims alleged against Timpte.  Timpte will be granted summary judgment on any negligence claims brought against it in the complaint.

More specifically, Plaintiffs allege that Timpte should be held strictly liable as a manufacturer for placing the defective Pro-Torq wheel retention system in the stream of commerce.  Plaintiffs also allege that Timpte is liable for failing to warn of the latent dangers associated with use of the Pro-Torq wheel retention system on semi-trailers.

**I.    STRICT LIABILITY FOR PRODUCT DEFECTS**

Utah generally follows the Restatement (Third) of Torts: Products Liability (1998) in its application of strict liability for product defects.  *See, e.g., Egbert v. Nissan N. Am., Inc.*, 2007 UT 64, ¶ 18, 167 P.3d 1058; *Tabor v. Metal Ware Corp.*, 2007 UT 71, ¶ 6, 168 P.3d 814; *Bishop v. GenTech Inc.*, 2002 UT 36, ¶ 25, 48 P.3d 218; *Dimick v. OHC Liquidation Trust*, 2007 UT App 73, ¶ 9, 157 P.3d 347.  Section 1 of the Restatement states:

> One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect.

Restatement (Third) of Torts: Products Liability § 1 (1998).  In general, this liability is imposed on any sellers or distributors of products, "even when such nonmanufacturing sellers or distributors do not themselves render the products defective and regardless of whether they are in a position to prevent defects from occurring."  Restatement (Third) of Torts § 1 cmt. e.  Utah follows the general tort law principle that "as between an injured buyer of a product, and the seller of the product, the seller must bear the liability."  *Sanns v. Butterfield Ford*, 2004 UT App 203, ¶ 15, 94 P.3d 301 (citing *Schaerrer v. Stewart's Plaza Pharmacy*, 2003 UT 43, ¶ 16, 79 P.3d 922).  *See also* Restatement (Third) of Torts § 2 cmt. o ("[S]trict liability is imposed on a wholesale or retail seller who neither knew nor should have known of the relevant risks, nor was in a position to have taken action to avoid them . . . .").

However, the general rule that all distributors and sellers of a defective product will be held strictly liable, regardless of their fault, is not without exceptions and the Restatement recognizes that "[l]egislation has been enacted in many jurisdictions that, to some extent, immunizes nonmanufacturing sellers or distributors from strict liability."  Restatement (Third) of Torts § 1 cmt. e.  Utah is among the states that has adopted such legislation.  *See* Utah Code Ann. § 78B-5-820(1) (2012) (abolishing joint and several liability in Utah and limiting apportionment of liability to the portion of fault attributable to any particular defendant).

Timpte identifies two defenses which they claim preclude any application of liability to it as a matter of law.  First, Timpte claims that it is entitled to a judgment as a matter of law because it is qualified for the protection of the contract specifications defense.  Second, Timpte claims that Utah's statutory abolition of joint and several liability and fault-based apportionment

scheme precludes the imposition of any liability on Timpte in this case.  Plaintiffs argue that neither defense is applicable.

Timpte argues that the court should grant its summary judgment motion on the design defect claim because the contract specifications defense entitles it to judgment as a matter of law. The contract specifications defense protects manufacturers from being held liable for injuries caused by design defects in products they manufacture in accordance with directions and specifications supplied by the purchaser of the products, unless the danger associated with following the specifications is obvious.  *See* 2 David G. Owen, M. Stuart Madden, and Mary J. Davis, *Madden & Owen on Products Liability* § 19:4 (3d ed. 2011).  *See also Mesman v. Crane Pro Services*, 512 F.3d 352, 358-59 (7th Cir. 2008)  (citing Restatement (Second) of Torts § 404 cmt. a (1977)) (under Indiana law, a contractor is "not required to sit in judgment on the plans and specifications or the materials provided by his employer" and "is not subject to liability if the specified design or material turns out to be insufficient to make the chattel safe for use, unless it is so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe."); *Spangler v. Kranco, Inc.*, 481 F.2d 373, 375 (4th Cir. 1973); *McCabe Powers Body Co. v. Sharp*, 594 S.W.2d 592, 595 (Ky. 1980); *Houlihan v. Morrison Knudsen Corp.*, 768 N.Y.S.2d 495, 496 (N.Y. App. Div. 2003); *Bloemer v. Art Welding Co.*, 884 S.W.2d 55, 59 (Mo. Ct. App. 1994).

The contract specifications defense was recognized by the Utah Supreme Court in the case of *Leininger v. Stearns-Roger Mfg. Co.*, 404 P.2d 33, 36 (Utah 1965).  In *Leininger*,  the court affirmed a summary judgment order entered by the trial court in favor of a general

contractor on claims of negligence and contractual breach of warranty.  *Leininger*, 404 P.2d at 39.  The contractor, which had been hired to construct a uranium ore processing plant, had installed two defective fans in accordance with the specifications of the company that hired it.  *Id*. at 39-40.  The court held that because the contractor was "a mere vehicle, a conduit through which the [fans] passed [that] did not design, sell or recommend the installation of such fans, and had no discretion in their selection," it could not be held liable for an injury caused by a defect in the fans in the absence of proof of the contractor's negligence.  *Id*. at 41.  Furthermore, the court held that there was "no basis for an implied warranty of fitness since the contractor provided the identical fans which he was required to furnish."  *Id*. at 42.

Because *Leininger* was decided before strict liability for product defects was recognized as a cause of action in Utah, its holding cannot be applied in a strict products liability case without additional analysis.  While no Utah court has ever applied the contract specifications defense to a strict products liability claim,[1] this court finds that Utah courts would follow the majority trend and recognize the defense regardless of the theory of liability.

With a few exceptions, most jurisdictions apply the contract specifications defense regardless of the theory of liability.  *See, e.g., Hatch v. Trail King Indus., Inc.*, 656 F.3d 59, 69

---

[1] This court has addressed the applicability of the contract specifications defense in strict liability cases once before in *Baxter v. Weldotron*, 840 F. Supp. 111, 114 (D. Utah 1993).  In *Baxter*, the court, while purporting to apply Utah law, applied the contract specifications defense to dismiss a strict liability claim against the manufacturer of a fan that was built in accordance with the specifications and instructions of the purchaser.  *Baxter*, 840 F. Supp. at 114-15.  However, because *Baxter* never analyzed whether the contract specifications defense followed by the Utah Supreme Court in *Leininger* should be restricted to cases that sound in negligence or extended to strict liability cases, we will discuss the issue in this matter.

(1st Cir. 2011) (applying Massachusetts law) ("[A] growing majority of courts have [held] that even in strict liability a manufacturer who merely fabricates a product according to the purchaser's design is not responsible, in the absence of an obvious defect, if the design proves bad. . . . Accordingly, the soundness of a contract specifications defense to design defect claims does not depend on the underlying theory of liability.") (citation and quotation marks removed); *Mesman*, 512 F.3d at 358-59 (finding that under Indiana law, the contract specifications defense is applicable in a strict products liability case); *Queen City Terminals, Inc. V. Gen. Am. Transp. Corp.*, 653 N.E.2d 661, 672-73 (Ohio 1995); *McCabe Powers Body Co.*, 594 S.W.2d at 595; *Houlihan*, 768 N.Y.S.2d at 496; *Bloemer*, 884 S.W.2d at 56. *See also* 2 *Madden & Owen* § 19:4; Restatement (Second) of Torts § 404 cmt. a.  Those jurisdictions that have rejected the contract specifications defense in strict product liability cases have reasoned that a defense based on an absence of fault is inconsistent with the policies that underlie the doctrine of strict liability.  *See Challoner v. Day & Zimmermann, Inc.*, 512 F.2d 77, 83 (5th Cir. 1975) (Tex. law), vacated on other grounds, 423 U.S. 3 (1975) ("A strict liability case, unlike a negligence case, does not require that the defendant's act or omission be the cause of the defect. It is only necessary that the product be defective when it leaves the defendant's control.");  *Johnston v. United States*, 568 F. Supp. 351, 354 (D. Kan. 1983) ("A necessary corollary of the fact that the contract specification defense has its source in ordinary negligence principles is that it does not apply to actions grounded in strict liability."); *Michalko v. Cooke Color and Chem. Corp.*, 451 A.2d 179, 182 (N.J. 1982); *Dorse v. Armstrong World Indus., Inc.*, 513 So.2d 1265, 1267 (Fla. 1987) ("[T]he contract specification defense is not, strictly speaking, a defense at all but an aspect of the

negligence elements of foreseeability and duty of care.").

While Utah courts have never applied the contract specifications defense in a strict products liability case, they likely would if faced with the issue. Utah, like other jurisdictions, has stepped away from a stringent application of strict liability against defendants who are not the cause of injuries that arise from defective products. Utah has adopted a statutory scheme that abolishes joint and several liability in products liability cases and limits the apportionment of liability to the portion of fault attributable to any particular defendant. *See* Utah Code Ann. § 78B-5-817 to -823 (2012). In *Sanns v. Butterfield Ford*, the Utah Court of Appeals held that Utah's statutory apportionment scheme "precludes a strict liability claim against [a passive seller] when the [defective product's manufacturer] is named in the suit, and when there is no evidence that the seller knew of or contributed in any way to the [product's] defective condition." 2004 UT App 203, ¶ 22. The *Sanns* court reasoned that because the defendant was merely a passive retailer of the allegedly defective product, no fault could be apportioned to it as a matter of law. Because Utah has explicitly rejected the application of strict liability to sellers of defective products without regards to fault, it can be inferred that its courts would follow the growing majority of jurisdictions that recognize the contract specifications defense regardless of the underlying theory of liability.

The parties in this matter agree that Timpte played no role in recommending or specifying the use of the Pro Torq wheel retention system on the trailers that were built for Northwest, including the trailer at issue in this case. Furthermore, Timpte was not aware of the dangers associated with the Pro Torq system at the time the trailer at issue was manufactured or

shortly thereafter. Therefore, Timpte was merely a contractor following the specifications and directions of its customer and, under Utah law, would not be strictly liable for defects associated with the Pro Torq wheel retention system. Because the contract specifications defense precludes the court from holding Timpte liable for design defects in the Pro Torq system at issue, the court does not need to address Timpte's second statutory defense. Timpte is entitled to summary judgment on the issue of strict liability for product defects.

## II.     FAILURE TO WARN

"[A] manufacturer [or seller] of a product who knows or should know of a risk associated with its product may be directly liable to the user if it fails to warn adequately of the danger." *House v. Armour of Am., Inc.*, 886 P.2d 542, 547 (Utah Ct. App. 1994). Conversely, a manufacturer or seller without notice of a risk associated with its product has no duty to warn. Even when a manufacturer or seller has no actual or constructive knowledge of a risk associated with their product at the time of sale, they have a continuing duty to warn of a danger if a "reasonable person in the seller's position would provide such a warning." Restatement (Third) of Torts: Products Liability § 10(a). *See also Dowdy v. Coleman Co., Inc.*, No. 1:11CV45 DAK, 2011 WL 6151432 (D. Utah Dec. 12, 2011) (unpublished) (finding that Utah law imposes a post-sale duty to warn consistent with Restatement (Third) of Torts: Products Liability § 10). *Cf. Tabor v. Metal Ware Corp.*, 2007 UT 71, ¶ 12, 168 P.3d 814 ("Utah does impose an independent post-sale duty on successor corporations to warn customers of defects in products manufactured and sold by the predecessor corporation as outlined in section 13 of the Restatement (Third) of Torts.").

Section 10 of the Third Restatement outlines when a reasonable person in the seller's position would provide a warning after the time of sale:

> (b) A reasonable person in the seller's position would provide a warning after the time of sale if:
> (1) the seller *knows or reasonably should know that the product poses a substantial risk of harm* to persons or property; and
> (2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and
> (3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and
> (4) the risk of harm is sufficiently great to justify the burden of providing a warning.

Restatement (Third) of Torts: Products Liability § 10(b) (emphasis added).  *Cf. Tabor*, 2007 UT 71, ¶ 12.  Thus, a seller only has a duty to warn about a risk associated with a product it sold in the past if it later "knows or reasonably should know that the product poses a substantial risk of harm to persons or property."  Restatement (Third) of Torts: Products Liability § 10(b)(1) and cmt. c.

The parties agree that Timpte neither knew or should have known about the dangers associated with the Pro Torq wheel retention system at the time the trailer at issue in this case was sold by Timpte.  Furthermore, Plaintiffs do not contest the fact that Timpte did not have actual knowledge of the risks associated with the Pro Torq wheel retention system before the accident that gave rise to this suit.  Plaintiffs do argue, however, that Timpte had constructive knowledge of the risks associates with the Pro Torq system.  Because of this alleged constructive knowledge, Plaintiffs argue that Timpte is liable for failing to warn of the dangers associated with the product.

The sole piece of evidence that Plaintiffs rely on to prove that Timpte had constructive notice of the dangers associated with the Pro Torq wheel retention system is a manufacturer's report of a defect with the Stemco Pro-torq Axle Nut System issued on June 21, 2002. Automobile Recall Center Information for 2003 Strick Van Recall, Attach. 3 at 55 (Dkt. No. 80.) The report was a recall notice issued for Strick Vans manufactured between 1999 and 2002. The problem with the recalled vans was summarized as follows:

> On Certain Dry Freight Vans Equipped With Stemco Pro-torq Axle Nut System, It Is Possible That Wheels Can Separate Due To Improper Installation Or Failure Of The Lock Ring Provided With The Pro-torq A

*Id*.

No reasonable fact finder could determine that such a report would put Timpte on constructive notice of the risks associated with the Pro Torq system that was installed on the trailer at issue in this case. The trailer involved in the accident was built in 1986, thirteen years prior to the build date of the vans involved in the Strick recall. Furthermore, the defective system noted in the Strick recall was called the "Stemco Pro-torq Axle Nut System." *Id*. The nuts used in the assembly of the trailer involved in the accident were manufactured by Metal Powder Products, or Ceromet, Inc., a predecessor entity of Metal Powder Products, not Stemco, the manufacturer of the system involved in the 2002 recall. *See* Mem. Supp. Second Mot. for Summ. J. 2 (Dkt. No. 101.) It would be unreasonable to expect Timpte to infer from the 2002 recall notice that there was a problem with the nuts installed on the trailers it built in 1986. There is nothing in the report that would indicate that such problems exist.

Plaintiffs argue that the 2002 report should have caused Timpte to undertake further research to determine if the same defect that caused the recall of the Strick vans existed in the wheel retention system that was installed on the trailer at issue in this case. No legal precedent has been offered by the Plaintiffs to support the argument that a non-manufacturing seller of a defective product has a duty to investigate the safety of said product because a similar product, manufactured by a different company and installed thirteen years later, was found to be defective. The court, in its own research, has found no support for this argument either.

Furthermore, the court finds no reason to determine that Timpte had a duty to investigate the safety of the wheel retention system installed on the trailer at issue as a result of the recall report presented to the court. The report was issued more than sixteen years later and did not clearly indicate a problem with the wheel retention system used on the trailers built by Timpte. Imposing such a duty on Timpte would create an unreasonable burden on all non-manufacturing sellers by forcing them to track every product sold for its useful life and retain design specifications in order to identify latent risks that are uncovered in similar products years later. Non-manufacturing sellers of products are not in the best position to bear this burden and in many cases would not have the information necessary to identify such risks. Such a duty, if appropriate, should normally be placed on the manufacturer of the product and not a down-line retailer.

Because Timpte was not put on constructive notice as a result of the 2002 recall report, and because it had no duty to undertake a more detailed investigation of a product it did not manufacture, Timpte had no duty to warn Northwest or subsequent owners and users of the

trailer at issue of the alleged defect associated with the Pro Torq wheel retention system. For this reason, Timpte cannot be held liable on a failure to warn claim. Timpte is entitled to summary judgment on this issue.

## CONCLUSION

For the reasons state above, the court hereby GRANTS Timpte's second motion for summary judgment in its entirety. (Dkt. No. 100.)

DATED this 7th day of June, 2012.

BY THE COURT:

_____
Clark Waddoups
United States District Judge